UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RANDOLPH WILLIAMS III ARNOLD** | \* | **No. 19-CV-12841** |
| | \* | **SECTION "T" (3)** |
| v. | | |
| | \* | **JUDGE GUIDRY** |
| **CHAD F. WOLF, ACTING SECRETARY, UNITED STATES SDEPARTMENT OF HOMELAND SECURITY** | \* | **MAGISTRATE DOUGLAS** |
| | \*   \*   \* | |

## STATEMENT OF UNDISPUTED FACTS

1. During EEO administrative proceedings, Plaintiff claimed: "On or around August 6, 2018, he learned that he was not selected for the position of Division Chief, GS-1896-14, advertised under Job Opportunity Announcement Number: USBP-IMP-10168092-JRB (JOA 10168092."). Exhibit A-3, Plaintiff's Clarification Letter and Attachments, at Bates DHS0013.

2. In March of 2018, USBP advertised, through a vacancy announcement on USAJobs, a Division Chief position. Exhibit A-1, Plaintiff's Individual Complaint of Employment Discrimination, Bates DHS0004, ¶ 1.

3. On April 4, 2018, Plaintiff applied for the advertised Division Chief position and was selected to be interviewed for the vacant position. *Id.*

4. On May 11, 2018, Plaintiff was advised that the vacancy announcement was cancelled. *Id.*

5. On August 6, 2018, Plaintiff attended a staff meeting wherein Chief Patrol Agent Bovino ("Chief Bovino") announced that Christopher Bullock had been non-competitively selected for the vacant Division Chief position sought by Plaintiff. Exhibit A-3, Plaintiff's Clarification Letter and Attachments, at Bates DHS0014 and DHS0015.

1

6. Chief Bovino did not competitively repost the Division Chief position on USAJobs.com but laterally reassigned Mr. Bullock, an agent who had been working outside of the New Orleans Sector. Rec. Doc. 1, Complaint, ¶¶ 73, 74.

7. Plaintiff did not apply for a lateral reassignment to the Division Chief position. Exhibit G, Deposition of Randolph Williams, p. 12, lines 12-16;

8. Plaintiff was not eligible to apply for a lateral reassignment to the Division Chief position. Exhibit G, Deposition of Randolph Williams, p. 13, lines 12-16.

9. The Office of Civil Rights and Civil Liberties ("CRCL") dismissed Plaintiff's administrative EEO complaint because of Plaintiff's untimely contact with an EEO counselor. Exhibit A-5, Bates DHS0035.

10. The CRCL found that Plaintiff learned of the vacancy announcement cancellation on May 11, 2018, and was informed of the lateral reassignment selection on August 6, 2018, which is 156 days and 69 days beyond the 45-day requirement to initiate EEO contact. *Id.* at Bates DHS0037.

11. The USBP is a component agency of CBP, within DHS. Exhibit D, Declaration of Richard M. Hudson, ¶ 2.

12. The USBP is the primary federal law enforcement organization responsible for preventing the entry of terrorists and terrorist weapons from entering the United States between official U.S. Customs and Border Protection ports of entry. *Id.*

13. Its traditional mission is to enforce immigration laws and to detect, interdict and apprehend those who attempt to illegally enter or smuggle people or contraband across U.S. borders between official ports of entry. *Id.*

14. The USBP has its headquarters in Washington, D.C. *Id.* at ¶ 3.

15. The Chief of the USBP sits atop the organizational chart, the Deputy Chief of the USBP is the second highest position, and the Chief of the Law Enforcement Operations Directorate is third in command. *Id.*

16. The USBP divides its operations into twenty field offices known as sectors. Id. at ¶ 4.

17. Each sector has a Chief Patrol Agent which is the highest management official in a sector, plans, directs, and implements all facets of the Border Patrol program and related activities in the sector. *Id.*

18. Similarly to headquarters, each sector has a Deputy CPA who is second in the chain of command, and then two or three Division Chiefs depending on the size of the sector. *Id.*

19. All CPAs directly report to the Chief of the Law Enforcement Operations Directorate at headquarters. *Id.*

20. In April of 2018, Richard Hudson, then acting Chief of the Law Enforcement Operations Directorate at USBP, recommended the selection of Gregory Bovino as the CPA of the New Orleans sector. *Id.* at ¶ 5.

21. The Deputy Chief of the USBP and Chief of the USBP concurred with Mr. Hudson's recommendation and Chief Bovino was selected as the New Orleans CPA with a start date in July 2018. *Id.*

22. The New Orleans Sector, by budget and assigned personnel, is one of the smallest USBP sectors. *Id.*

23. Prior to Chief Bovino's arrival, the New Orleans sector's interdiction and apprehension statistics were considered subpar by USBP management personnel at headquarters. *Id.*

24. The New Orleans sector had the reputation of an underperforming sector with numerous personality conflicts amongst the sector management team. *Id.*

25. Mr. Hudson recommended Chief Bovino as the New Orleans CPA, in part, because of Mr. Hudson's belief that Chief Bovino could increase sector productivity and improve employee morale. *Id.*

26. After selected for the New Orleans CPA, Chief Bovino Chief Bovino decided asked that two vacancy announcements for positions within the New Orleans Sector be cancelled so that he could be more involved in the selection process and potentially recruit candidates who he felt would be strong candidates for the positions. Exhibit B, Declaration of Gregory Bovino, ¶ 5.

27. It is customary for an incoming CPA to play a role in the selection of vacant positions on his senior staff. Exhibit D, Declaration of Richard Hudson, ¶ 7.

28. It was not uncommon for a CPA to cancel a certificate if the CPA did not believe that any of the candidates had the desired traits for the position. *Id.*

29. CBP, including the USBP, is able to fill vacant positions through a number of different procedures. Exhibit E, Declaration of Michael Rosamond, ¶ 2.

30. One such procedure is a non-competitive lateral reassignment. *Id.*

31. To be eligible for a lateral reassignment, a candidate must currently hold or have previously held a position with the same or higher full performance grade level on a permanent basis and not have been demoted for conduct or performance issues. *Id.*

32. Border Patrol Agents generally seek a lateral reassignment by submitting a memorandum to the CPA of the sector that they wish to be reassigned to. *Id.* at ¶ 3.

*33.* If the Chief would like to select an employee who applied for a non-competitive lateral reassignment, he may do so in coordination with the approval of USBP Headquarters. *Id.*

34. Guidance issued by Ronald Vitiello, Chief of USBP, in 2017 stated that lateral reassignment requests were to be used infrequently, but were still permissible as long as the CPA coordinated with the Law Enforcement Operations and Mission Readiness Operations Directorates. *Id.*

35. In the month following the cancellation of the vacancy announcement, Chief Bovino received, via memorandum, two lateral reassignment requests for the Division Chief position. Exhibit B, Declaration of Gregory Bovino, ¶ 6.

36. The first request for lateral reassignment came from Supervisory Border Patrol Agent Eric Billings and, thereafter, Deputy Patrol Agent in Charge (DPAIC) Christopher Bullock submitted the second request for lateral reassignment. *Id.* at ¶ 7; *see also* Exhibit B-1, Memorandum, Recommendation for Vacant GS-14 Division Chief, New Orleans Sector.

37. Both agents were eligible for a lateral reassignment because they held or previously held a GS-14 position. Exhibit B, Declaration of Gregory Bovino, ¶ 6.

38. As the CPA, Chief Bovino did not have the authority to grant a lateral reassignment request to a GS-14 position. *Id.* at ¶ 9.

39. On July 19, 2018, Chief Bovino sent a formal request for Lateral Reassignment of Mr. Bullock to Mr. Hudson, Acting Chief Law Enforcement Operations Directorate at Headquarters, setting forth his reasons for believing that Mr. Bullock was right person for the Division Chief position at the New Orleans Sector. Exhibit B-1, Bates DHS001-DHA008.

40. Chief Bovino learned that he also needed the concurrence of Scott Luck, Acting Deputy Chief of USBP at Headquarters. Exhibit B, Declaration of Gregory Bovino, ¶ 10.

41. On July 30, 2018, Chief Bovino sent a Memorandum Recommendation for Vacant GS-14 Division Chief, New Orleans Sector to not only Mr. Hudson but also Scott Luck. *Id.*; *see also* Exhibit B-1, Bates DHS009-DHA010.

42. Chief Bovino's request to laterally reassign Mr. Bullock from Tucson Sector to the vacant Division Chief at New Orleans Sector was approved by both Mr. Hudson and Mr. Luck. *Id.*; *see also* Exhibit B, Declaration of Gregory Bovino, ¶ 10.

43. While Mr. Williams had reached a higher rank than Mr. Bullock, Mr. Hudson considers Mr. Bullock's experience as the DPAIC at Imperial Beach and the Tucson Intelligence Unit to be considerably more complex and valuable than Mr. Williams' experience as PAIC in the New Orleans sector. Exhibit D, Declaration of Richard Hudson, ¶ 10.

44. First, Mr. Williams supervised fewer than twenty employees and operations were only conducted for forty hours per week. *Id.*

45. Mr. Bullock supervised hundreds of employees and the operations were conducted twenty-four hours a day, seven days a week. *Id.*

46. Second, Imperial Beach and Tucson were two of the USBP's busiest areas and were known for progressive law enforcement techniques and strategies. *Id.*

47. Professional experience of a DPAIC at the Imperial Beach Station, like that of Mr. Bullock's, makes a candidate objectively better suited for promotion than a candidate with experience as a Patrol Agent in Charge in the New Orleans Sector. Exhibit C, Declaration of Scott Luck, ¶ 6.

48. The heart of the USBP mission and its most difficult obstacles take place on the Southwest Border. *Id.*

49. The bulk of the USBP apprehensions, people and contraband, occur on the Southwest Border. *Id.*

50. It is also where Border Patrol Agents are most likely to face dangers from the drug cartels or other criminal elements. *Id.*

51. The Imperial Beach DPAIC is supervising hundreds of agents at a station who put themselves in danger every day in furtherance of the USBP mission. *Id.*

52. The Imperial Beach station operates 24 hours a day, seven days a week. *Id.*

53. To successfully serve in this position, an agent must have a strong grasp of the USBP's strategic vision and be able to promptly and appropriately respond to the emergencies inherently attached to the position. *Id.*

54. In addition to being operationally sound, the Imperial DPAIC must be able to appropriately handle the issues that naturally arise when managing a large workforce—the majority of which are members of a collective bargaining unit. *Id.*

55. A PAIC in the New Orleans Sector simply does not face the same operational or personnel-related complexities. *Id.*

56. A PAIC in the New Orleans Sector supervises fewer than 20 employees, and the operations, based primarily on its geographic location and budget constraints, are far less complex than those on the Southwest Border. *Id.*

57. The New Orleans Sector only received funding to staff an 8-hour day/ 5-day a week workweek. *Id.*

58. The pay grades of the two positions are reflective of the complexity and responsibility of the positions. *Id.*

59. The Agency grades the Imperial Beach DPAIC Position as a GS-14 and grades the New Orleans PAIC position as a GS-13. *Id.*

The above facts are believed to be undisputed and, therefore, present a proper subject for motion for summary judgment in that there exists no genuine issue of material fact between Plaintiff and Defendant herein. Therefore, Defendant is entitled to judgment as a matter of law.

Respectfully Submitted,

**PETER G. STRASSER
UNITED STATES ATTORNEY**

*/s/ Sandra Ema Gutierrez*

SANDRA EMA GUTIERREZ
Assistant United States Attorney
LA Bar # 17888
650 Poydras Street, 16th Floor
New Orleans, Louisiana 70130
Telephone: (504) 680-3000
sandra.gutierrez@usdoj.gov