UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RANDOLPH WILLIAMS, III** | * | No. 19-CV-12841 C/W 19-14234 |
| | | *applies to* No. 19-14234 |
| | * | |
| **VERSUS** | | SECTION "T" (3) |
| | * | |
| **ALEJANDRO MAYORKAS, SECRETARY,** | | **JUDGE GUIDRY** |
| **DEPARTMENT OF HOMELAND** | * | |
| **SECURITY** | | **MAGISTRATE DOUGLAS** |
| | * * * | |

**REPLY MEMORANDUM**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

The moving party, Alejandro Mayorkas, Secretary, Department of Homeland Security ("Secretary"), files the instant Reply Memorandum in support of the motion for summary judgment that urges this Court to dismiss Plaintiff Jon Joyner's discrimination claim as a matter of law. Rec. Doc. 109, Motion for Summary Judgment. In his opposition, Joyner does not oppose the dismissal of his 26 claims of retaliation and, therefore, Joyner's suit consists of a single claim of racial discrimination in connection with his claim of non-selection for the Division Chief position in the New Orleans Sector. Rec. Doc. 114, Joyner's Opposition Memorandum, p. 1.

It is undisputed that the subject Division Chief was filled by a non-competitive lateral reassignment. It is undisputed that two applicants applied for the lateral reassignment. And it is also undisputed that Joyner did apply for the subject position through the non-competitive procedure. Although Joyner had previously applied for the Division Chief position through the competitive procedure, that vacancy announcement was canceled without a selection.

As such, Joyner fails to make a prima facie case of racial discrimination because he did not compete for the non-competitive lateral reassignment and, consequently, he was not "rejected" for

1

the position. Alternatively, Joyner fails to establish pretext through either through establishing that he was clearly better qualified for the Division Chief position than the selectee, Christopher Bullock, or through meaningful statistics. Accordingly, the Secretary is entitled to summary judgment as a matter of law.

      **A.    Joyner has not established a prima facie case of racial discrimination**

It is not disputed that the subject Division Chief position with the United States Border Patrol ("USPB") was filled via a non-competitive lateral reassignment. Rec. Doc. 109, Motion for Summary Judgment, Exhibit B, Declaration of Gregory Bovino, ¶¶ 6-10. Joyner testified that he did not apply for the lateral reassignment. *Id.* at Exhibit G, Joyner's Deposition, p. 30, lines 11-19. Therefore, Joyner cannot meet his prima facie case of non-selection because he did not apply for and, therefore, was not rejected for the position. *See* Rec. Doc. 109-1, Memorandum in Support of Summary Judgment, p. 16.

Failure to apply for a disputed promotion will bar a "failure to promote" claim absent a showing that such an application would have been a futile gesture. *Shackelford v. Deloitte & Touche*, LLP, 190 F.3d 398, 406 (5th Cir.1999); *see also Grice v. FMC Techs. Inc.*, 216 Fed. Appx. 401, 406 (5th Cir.2007) (unpublished) (finding no prima facie showing of "failure to promote" where employee failed to apply for the promotion at issue). The "futile gesture" exception will only apply where "the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." *Shackelford*, 190 F.3d at 406. Joyner has made no such allegation of futile gesture.

In response to the Secretary's argument that he cannot meet his prima facie burden, Joyner responds, in part, by calling the argument bizarre and stating that Chief Bovino "admits that he could have selected Joyner (or Mr. Williams) for Division Chief instead of Mr. Bullock, but Mr.

2

Bovino simply chose not to."[1]  Rec. Doc. 114, Plaintiff's Opposition, p. 18.  Joyner's argument is misleading and not in context.

Chief Bovino's statement that he could have selected either Joyner or Williams was in response to a hypothetical.  During his deposition in the *Williams* suit, Chief Bovino was asked to assume that he had not canceled the competitive list of eligible for the Division Chief position.  *See* Exhibit L, Excerpt from Deposition of Gregory Bovino, p. 267, line 8-22 & p. 268, lines 1-10.  Chief Bovino was shown the Certificate of Eligibles from the canceled competitive job announcement which included the names of Joyner, Williams, and others and he was asked whether he could have selected either Joyner or Williams for the division chief position.  *Id.* at p. 267, lines 23-25; p. 268, lines 1-10.  Chief Bovino responded "yes" to the hypothetical question.  *Id.* p. 268, line 10.

1. **Joyner's "statistical evidence" falls short**

Citing *Pouncy v. Prudential Ins. Co. of Am.*, 668 F.2d 795, 802 (5th Cir. 1982), Joyner submits that he may prove his prima facie case of racial discrimination statistically "if gross statistical disparities in the composition of an employer's work force can be shown."  Rec. Doc. 114, Joyner's Opposition, p. 17. *Pouncy* is not applicable.

To begin, the quotation cited by Joyner is in reference to the Fifth Circuit's analysis of a prima facie case in a class action that had alleged disparate treatment at Prudential Insurance Company of America.  *Id.*; *Pouncy*, 668 F.2d at 802.  The instant case is not a class action.  Regardless, *Pouncy* is instructional on the use of statistical evidence in discrimination suits.  The

---

[1] In the fact section of his opposition memorandum, Joyner makes the same misleading statement about Chief Bovino admitting that he could have selected Joyner for the position had he wanted to but preferred Bullock instead.  *See* Rec. Doc. 114, Joyner's Opposition, p. 12.  Here, Joyner cites to Chief Bovino's deposition in the *Williams* case.  *Id.*

*Pouncy* court cautioned that statistical evidence offered must be "meaningful." *Id.* In establishing an inference of discrimination from statistical evidence the "required comparison [is] to a qualified pool of employees presumptively eligible for promotion." *Id.* at 803. Herein, Joyner has made no such meaningful proffer.

Instead, Joyner offers an unverified statements about the statistical makeup of Black Border Patrol Agents and concludes that Border Patrol's senior leadership positions are segregated by race. Rec. Doc. 114, Joyner's Opposition, p. 15. No data is provided on the qualified pool of Black/African American employees/candidates presumptively eligible for promotions at the USBP. *See Lewis v. N.L.R.B.*, 750 F.2d 1266, 1275 (5th Cir. 1985). And no data is provided on how many Black/African Americans applied for promotions.

While testimony may have indicated that Black agents are statistically underrepresented at Border Patrol, there was no evidence as to what factors may cause such an underrepresentation. In reality, Border Patrol has had trouble recruiting Border Patrol Agents of all races. *See* https://www.npr.org/2019/01/28/689473992/why-its-so-hard-to-recruit-and-retain-border-patrol-agents; https://www.politico.com/story/2019/02/10/border-patrol-recruitment-crisis-1157171. Accordingly, Joyner's reliance on the proffered "statistics" is deficient and, therefore, unreliable.

**B.     The Secretary's business reasons for selecting Christopher Bullock**

Joyner claims that Chief Bovino fails to offer any credible or legitimate reason for passing over Mr. Joyner and Mr. Williams in favor of Mr. Bullock. Rec. Doc. 114, Joyner's Opposition, p. 21. Chief Bovino did not compare the qualifications of either Joyner or Williams to those of Bullock's, the selectee, because neither Joyner nor Williams applied for the lateral reassignment. Exhibit B-2, Recommendation for Vacant GS-14 Division Chief, New Orleans Sector. However, in his recommendation memorandum, Chief Bovino detailed his reasons for selecting Christopher

Bullock in comparison to the only other employee that applied – Eric Billings.

Joyner cites two Fifth Circuit cases in an attempt to demonstrate that Chief Bovino's articulated reasons for selecting Bullock are legally insufficient. Neither case is instructive.

In *Alvarado v. Texas Rangers*, 492 F.3d 605, 617 (5th Cir. 2007), the defendant-employer offered interview scores for the plaintiff-applicant but offered no evidence of how or why the interviewers arrived at those scores. Further, the *Alvarado* defendant did not provide evidence of why the interviewers rated the other candidates higher than the plaintiff. *Id*. In Joyner's second case, *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004), the defendant-employer simply stated that the plaintiff-applicant was "not sufficiently suited" for the contested position. The defendant also stated, without elaboration, that the selectee was the best qualified candidate. *Id*. at 318. The Fifth Circuit found that neither of the employers in these two cases satisfied their burden of producing a legitimate non-discriminatory reason for their decisions.

In the instant case, Chief Bovino compared Bullock's application with that of the only other applicant, Eric Billings. Rec. Doc. 109, Motion for Summary Judgment, Exhibit B-2, Recommendation for Vacant GS-14 Division Chief, New Orleans Sector. And Chief Bovino articulated specific reasons for his finding that Bullock was well-suited for the Division Chief position in the New Orleans Sector. *Id.*

### C. Alternatively, Joyner has not shown pretext

Assuming Joyner can make a prima facie case of racial discrimination in connection with his non-selection to the Division Chief position, his claim nonetheless fails because he has not established pretext. Chief Bovino articulated specific reasons for the selection of Christopher Bullock for the Division Chief position and Joyner has failed to produce any competent summary judgment evidence that the selection of Christopher Bullock was motivated by racial bias. Rec.

Doc. 109, Motion for Summary Judgment, pp. 17; Exhibit B-2, Recommendation for Vacant GS-14 Division Chief, New Orleans Sector.

### 1. Favoritism/pre-selection

Joyner believes that the competitive recruitment for the subject Division Chief position was canceled because Chief Bovino recruited Christopher Bullock for the position. Rec. Doc. 114, Joyner's Opposition, p. 9, 10, 11, 22. Joyner also refers to Chief Bovino's recruitment of Christopher Bullock for the subject Division Chief position as a secret. *Id*. at pp. 11, 12, 23. Joyner also suggests that Chief Bovino favored Mr. Bullock during the selection process. *Id*. at p. 12, fn. 65.

Joyner's argument that Chief Bovino recruited Christopher Bullock fails to demonstrate pretext. Whether Chief Bovino's pre-selected Mr. Bullock in no way undermines or allows the fact-finder to disbelieve the Secretary's assertion that Mr. Bullock was more qualified than Joyner for the Division Chief position. Numerous courts have found that pre-selection, on its own, does not demonstrate pretext. *See Hiner v. McHugh*, 546 F. App'x 401, 407 (5th Cir. 2013) (stating that pre-selection, in and of itself, does not establish pretext unless the pretext was motivated by discriminatory animus) (citing *Walsdorf v. Bd. of Comm'rs for the E. Jefferson Levee Dist.*, 857 F. 2d 1047, 1051 (5th Cir. 1988)); *Rowe v. Jewell*, 88 F.Supp.3d 647 665 (E.D. La. 2015) (finding the plaintiff failed to create a material fact issue of pretext with his allegation of pre-selection in the absence of discriminatory animus); *Glass v. Lahood*, 786 F. Supp. 2d 189, 224 (D.D.C. 2011) ); *Moore v. Mukasey*, 305 F. App'x 111, 117 (finding that plaintiff's argument regarding pre-selection did not establish that defendant's stated reasons were pretext); *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005) (stating that supervisor's pre-selection of an employee for promotion "is not sufficient evidence for jurors reasonably to conclude" that the

explanation surrounding employee's selection was pretextual). Joyner has failed to demonstrate that Chief Bovino's recruitment of Mr. Bullock demonstrates pretext.

### 2. Joyner did not establish that he was clearly better qualified

Joyner claims, in part, that he was more qualified for the subject position than the selectee Christopher Bullock because he scored higher on a Kepner-Tregoe Exercise." Rec. Doc. 114, Joyner's Opposition, p. 7. Joyner also claims that this exercise or matrix was used for promotions at USBP Headquarters and by Michael Harrison, an Acting Chief Patrol Agent of the New Orleans Sector.[2] *Id.* at p.7. However, there is no evidence that this exercise is used throughout the agency. Moreover, there is no evidence presented wherein Mr. Harrison compared the qualifications of Christopher Bullock with those of Joyner's for the subject Division Chief position.

Demonstrating that one is "clearly better qualified" is understandably very difficult to meet so as to avoid judicial second-guessing of business decisions; and it is well-established that better education, work experience, and/or longer tenure with the company does not necessarily make a candidate clearly better qualified. *See Price v. Federal Exp. Corp.*, 283 F.3d 715, 723 (5th Cir. 2002). Selecting Christopher Bullock as the Division Chief was well within the "realm of reason." *See Deines v. Texas Dept. of Protective and Regulatory Services*, 164 F.3d 277, 282 (5th Cir. 1999); *see also* Rec. Doc. 109, Motion for Summary Judgment, Exhibit B-2, Recommendation for Vacant GS-14 Division Chief, New Orleans Sector. And as such, Joyner failed to raise a genuine issue of material fact that USBP's selection decision was motivated by discrimination.

---

[2] Joyner makes a false claim that USBP relocated Mr. Bovino away from New Orleans Sector in the wake of these lawsuits in a shameless attempt to bolster his suit. Rec. Doc. 114, Joyner's Opposition, p. 7. Throughout the litigation there has been no evidence to support such an inflammatory statement and Joyner's lack of citation to supporting evidence demonstrates the statement's lack of credibility.

### C.     Inaccurate, hyperbole, exaggerations which may mislead

Throughout his Opposition Memorandum, Joyner takes liberty with facts and creates misleading and false statements. The following are a few of the particularly egregious examples.

**Misleading Statement #1:** USBP's argument that Mr. Joyner 'did not apply' for the Division Chief position is bizarre and unsupported by the evidence. Rec. Doc. 114, Joyner's Opposition, p. 18.

**Undisputed facts:** It is undisputed that Joyner did not apply for the Division Chief position via lateral transfer reassignment which ultimately led to the selection of Christopher Bullock for the Division Chief position. Joyner testified as such in his deposition. Rec. Doc. 109, Motion for Summary Judgment, Exhibit G, Deposition of Jon Joyner, p. 30, lines 11-19. It is undisputed that only two candidates applied via a lateral reassignment request: Christopher Bullock and Eric Billings. *Id.* at Exhibit B, Declaration of Gregory Bovino, ¶ 7; Exhibit B-2, Recommendation for Vacant GS-14 Division Chief, New Orleans Sector.

Joyner applied for the Division Chief position when that position was initially advertised competitively. *Id.* at Exhibit A, Declaration of Richard M. Hudson, ¶ 6. It is also undisputed that the May 2018 competitive job posting was canceled. *Id.* at Exhibit B, Declaration of Gregory Bovino, ¶ 6; *see also* Exhibit A, Declaration of Richard M. Hudson, ¶ 7.

**Misleading Statement #2:** "Mr. Bovino admitted that he could have selected Mr. Joyner for the position had he wanted to, but he preferred Bullock and so he chose him instead." Rec. Doc. 114, Joyner's Opposition, p. 12.

**Undisputed Facts:** Joyner's statement is misleading. Chief Bovino's cited testimony was in response to a hypothetical question. In his deposition, Chief Bovino was asked to assume that he had not canceled the Certificate of Eligibles when the Division Chief position was initially

8

advertised competitively. Exhibit L, Excerpts, Deposition of Gregory Bovino, p. 267, line 25 & p. 268, lines 1-10.

Chief Bovino was shown the Certificate of Eligibles from the canceled competitive job announcement which included the names of Joyner and Williams and asked to assume that he had not canceled the Certificate. *Id.* at p. 268, lines 4-6. Bovino was then asked if he had the ability to recommend either Joyner or Williams for the division chief position. *Id.* at p. 268, lines 1-10. In response to the hypothetical, Chief Bovino responded affirmatively. Id. at p. 268, lines 1-10.

**Misleading Statement #3:** "Finally, at the time of Mr. Bullock's selection, it was USBP policy that a selecting official chose an alternate candidate for promotion in cases where the primary candidate could not clear the vetting process for promotion, or otherwise declined the promotion after the fact." Rec. Doc. 114, Plaintiff's Opposition, p. 12.

**Undisputed Facts:** In support of this proposition, Joyner cited limited deposition testimony of Brian Hastings. *Id.*, fn. 68. However, the two page excerpt is incomplete and if the reader were to see the beginning of the dialogue on this topic, at page 83 of the deposition transcript, it would demonstrate that Brian Hastings was specifically discussing the May 2018 cancelled competitive selection process. *See* Exhibit M, excerpts Deposition of Brian Hastings. There was no discussion or no evidence that such a policy of selecting an alternate applies to selections made via non-competitive lateral reassignment. On the contrary, the undisputed facts establishes that there is no requirement for an alternate to be recommended when considering a request for non-competitive later reassignment. *See* Rec. Doc. 109, Motion for Summary Judgment, Exhibit E, Declaration of Michael J. Rosamond, ¶ 4.

**Misleading Statement #4:** An email with three Civil War photos: "During deposition, a former Directorate Chief and current Chief Patrol Agent, Brian Hastings, was shown this email

9

chain and confirmed that not only should Mr. Bovino have disciplined or referred Mr. Bullock for investigation for sending the racially charged email, but that Hastings – now having seen the images – had the official duty to report Bullock for the misconduct." Rec. Doc. 114, Joyner's Opposition, p. 14.

**Undisputed Facts**: Joyner's statement is misleading.  While Mr. Hastings said that he would have to report the emails with the three Confederate photos sent by Christopher Bullock t if it hadn't been reported, Mr. Hastings *did not* testify that Mr. Bovino should have disciplined Mr. Bullock.  *Id.* at Exhibit Q, Brian Hastings depositions excerpts, p. 113, lines 3-25; pg. 114, lines 1-4.  Nor did Mr. Hastings testify that Chief Bovino should have reported Mr. Bullock for investigation.  *Id*.  This line of questioning began with a hypothetical – Joyner asked Mr. Hastings to presume that Mr. Bovino admitted to having race-based attitudes at the workplace.  *Id*. at p. 113, lines 3-6.

Based on the foregoing and the arguments set forth in the Motion for Summary Judgment, the Secretary of the Department of Homeland Security prays that the motion be granted, and the Joyner's suit be dismissed at his costs.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

BY:   /s/*Sandra Ema Gutierrez*
**SANDRA EMA GUTIERREZ**
Assistant United States Attorney
LA Bar #17888
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3124
Sandra.gutierrez@usdoj.gov