## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RANDOLPH WILLIAMS III**                                      CIVIL NO. 19-12841
                                                               c/w 19-14234

**VERSUS**                                                     SECTION: T(3)

**ALEJANDRO MAYORKAS, SECRETARY,**
**DEPARTMENT OF HOMELAND SECURITY**

## ORDER

Before the Court is Defendant the United States Department of Homeland Security's ("DHS") *Motion for Reconsideration*.[1] The Plaintiff Randolph Williams filed a response.[2] For the following reasons, the motion is **GRANTED** while the request for relief is **DENIED**.

## FACTUAL BACKGROUND

In April of 2018, the United States Border Patrol hired Gregory Bovino to replace the retiring Chief Patrol Agent, or regional manager, of their New Orleans office.[3] Around that time, the Border Patrol also announced the opening of a Division Chief position, or an assistant manager, in the New Orleans office.[4] To fill the role, Border Patrol officials interviewed applicants and selected six people for further consideration, including the Plaintiffs Jon Joyner and Randolph Williams.[5] Once Mr. Bovino learned of the ongoing hiring efforts, he requested the search be cancelled for ninety days.[6] Mr. Bovino wanted to be more involved in the selection process for the

---

[1] R. Doc. 102.
[2] R. Doc. 103.
[3] R. Doc. 75 at 7-8.
[4] *Id.* at 5. The position was advertised on USAJOBS.gov.
[5] *Id.* at 5-6.
[6] *Id.* at 32-33. Specifically, Mr. Bovino said "I don't think the announcement received the attention it should've, and we will make more of an effort to recruit the right pool of candidates." *Id.*

New Orleans office's senior staff.[7] Mr. Williams was notified of the cancellation and did not re-apply for the position.[8]

Mr. Bovino started as Chief Patrol Agent on July 9, 2018. That day, Mr. Bovino recommended a new candidate, Christopher Bullock, for the Division Chief position.[9] Mr. Bovino, who had worked with Mr. Bullock for nearly twenty years, assisted Mr. Bullock in applying for the position through a lateral re-assignment request.[10] Mr. Bullock, who is white, was approved and the position was never re-announced.

Now, Mr. Joyner and Mr. Williams, who are both black, have brought Title VII race discrimination claims against the United States Department of Homeland Security ("DHS").[11] Generally, the Plaintiffs argue Mr. Bovino "favors white, non-Hispanic men over other demographics" and, therefore, Border Patrol's "personnel decisions" were "motivated by race-based animus."[12] Specifically, the Plaintiffs contend Mr. Bovino hired Mr. Bullock, although he is "less qualified," through a non-competitive process subject to racial bias.[13]

In the present motion, DHS asks this Court to reconsider its motion for summary judgment because this Court "did not address" its merits arguments.[14] In the original motion, DHS moved for summary judgment on two grounds.[15] First, DHS argued that, because Mr. Williams did not apply for a lateral reassignment as Mr. Bullock did, he "cannot make a prima facie showing of discrimination."[16] Second, DHS contended Mr. Williams could not demonstrate that Mr. Bovino's

---

[7] See id.
[8] R. Doc. 1 at 9; R. Doc. 75 at 25, 31.
[9] Id. at 12, 32-33.
[10] See id. at 31-33. Apparently, Mr. Bovino had reached out to Mr. Bullock in the months prior to his hiring decision about the position and helped him draft his lateral re-assignment request.
[11] R. Doc. 1.; Joyner v. United States Department of Homeland Security, Case No. 19-cv-14234.
[12] Id. at 8, 13.
[13] Id. at 14.
[14] R. Doc. 102 at 1.
[15] R. Doc. 61.
[16] R. Doc. 61-1 at 14.

reason for hiring Mr. Bullock was mere pretext for racial discrimination.[17] DHS asserts Mr. Bullock's "solid experience" as sufficient objective support to overcome Mr. Williams's pretext argument.[18]

Mr. Williams raised two responses.[19] First, he argued DHS's "hyper-technical or bureaucratic reading" of the application process is meritless.[20] Mr. Williams applied for the position initially and did not apply for a lateral re-assignment because Mr. Bovino "collaborated with Mr. Bullock" to fill the position non-competitively.[21] Second, Mr. Williams asserted Mr. Bovino's stated reason for hiring Mr. Bullock was mere pretext for race discrimination.[22] Mr. Williams argued the proffered excuse, namely Mr. Bullock's experience and suitability for the job, lacked objective corroboration due to the personal nature of the hiring decision.[23] Mr. Williams contended the lack of corroboration, coupled with Mr. Bovino's potential history of favoring white employees and participating in racially-charged email conversations, indicates Mr. Bovino's decision may have been racially motivated.[24]

## LAW & ANALYSIS

A Rule 59(e) motion "calls into question the correctness of a judgment" and allows a party to "correct manifest errors" made by the court.[25] Generally, district courts have "considerable discretion" under Rule 59(e).[26] However, if a Rule 59(e) motion is filed untimely, or more than

---

[17] *Id.*
[18] *Id.* at 16-17.
[19] R. Doc. 75.
[20] *Id.* at 31.
[21] *Id.*
[22] *Id.* at 31-34.
[23] *Id.* at 33.
[24] *Id.* at 33-34. Mr. Bovino received an email from Mr. Bullock referencing the Confederacy and depicting Mr. Bovino as a Confederate general. Members of the New Orleans field office, which includes minorities, were depicted as Union soldiers.
[25] *In re Transtexas Gas Corp.*, 303 F. 3d 571, 581 (5th Cir. 2002); *Waltman v. Int'l Paper Co.,* 875 F. 2d 468, 473 (5th Cir. 1989).
[26] *Templet v. HydroChem Inc*., 367 F.3d 473, 479 (5th Cir. 2004).

twenty-eight days after a decision, a court may treat it as a Rule 60(b) motion.[27] Rule 60(b) also allows a court to correct an error, but only for final rulings.[28] Alternatively, a court may analyze a motion for reconsideration under Rule 54(b), which is governed by a "less stringent" standard, as it "allows parties to seek reconsideration of interlocutory orders" and may prompt a court to 'revise[] at any time…any order or other decision ... [that] does not end the action.'"[29]

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record," but it must "refrain[] from making credibility determinations or weighing the evidence."[31] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[32] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.[33] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[34]

Under Title VII of the Civil Rights Act of 1964, it is illegal discriminate against an employee "because of such individual's race, color, religion, sex, or national origin."[35] To prove a Title VII adverse employment action claim, a plaintiff may rely on direct or circumstantial

---

[27] *Halicki v. Louisiana Casino Cruises, Inc*., 151 F. 3d 465, 470 (5th Cir. 1998).

[28] Federal Rule of Civil Procedure 60(b).

[29] *Austin v. Kroger Texas, L.P*., 864 F.3d 326, 336 (5th Cir. 2017).

[30] Fed. R. Civ. P. 56(a).

[31] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398–99 (5th Cir. 2008).

[32] *Galindo v. Precision Am. Corp*., 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

[33] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

[34] *Smith v. Reg'l Transit Auth*., 827 F.3d 412, 420 n.4 (5th Cir. 2016).

[35] 42 U.S.C. § 2000.

evidence.[36] When a claim rests exclusively on circumstantial evidence, the district court must apply the three-part *McDonnel Douglas* burden-shifting framework.[37] First, the plaintiff must make a prima facie showing of discrimination

> [A plaintiff must show that] "(1) he belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and (4) a person outside of his protected class was hired for the position."[38]

If a plaintiff passes the first step, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for their employment action.[39] If the defendant satisfactorily does so, then the burden shifts back to the plaintiff produce "substantial evidence indicating that the proffered…reason is a pretext for discrimination."[40] A plaintiff can prove pretext through "evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"[41] A proffered explanation is "false or unworthy of credence if it is not the real reason for the adverse employment action."[42]

## I.     Motion for Reconsideration

As an initial matter, the Court finds the characterization of DHS's present motion irrelevant. While DHS filed their motion for reconsideration outside of the twenty-eight-day window, DHS correctly points out that this Court "did not address whether Plaintiff established a prima facie case or whether Plaintiff established pretext."[43] Therefore, whether the analysis is governed by Rule 59(e), Rule 60(b), or Rule 54(b), the Court finds further consideration of DHS's

---

[36] *Burrell v. Dr. Pepper Grp., Inc.*, 482 F. 3d 408, 411 (5th Cir. 2007).
[37] *Id.*; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).
[38] *Id.* at 411-412.
[39] *McDonnell Douglas*, 411 U.S. at 802.
[40] *Laxton v. Gap Inc.*, 333 F. 3d 572, 578 (5th Cir. 2003). Although not at issue here, a party may also show "that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Burrell*, 482 F. 3d at 412.
[41] *Id.* (citation omitted).
[42] *Id.*
[43] R. Doc. 102 at 1.

motion for summary judgment is necessary to avoid a manifest injustice. Accordingly, considering the Court's discretion in the matter, the motion for reconsideration is **GRANTED**.

## II.     Mr. Williams's Application

As for DHS's original motion, the Court finds DHS's non-application argument unconvincing. Mr. Williams applied for the Division Chief position, interviewed with DHS officials, and was selected for consideration. Then, Mr. Bovino cancelled the listing. Prior to the cancellation, DHS informed Mr. Bovino that six candidates, including Mr. Williams, had been selected for consideration. Following the cancellation, Mr. Bovino was again directed to the list of selected candidates and urged to "compare" them with Mr. Bullock before making a hiring decision.[44] When viewed in a light most favorable to Mr. Williams, Mr. Bovino clearly was aware of Mr. Williams's application when he filled the position. Therefore, DHS cannot now rely on the removal of the listing to defend Mr. Bovino's use of a non-competitive process.

## III.     Summary Judgment

Furthermore, as for summary judgment, the Court agrees with Mr. Williams and identifies at least two issues that preclude summary judgment in favor of DHS. First, Mr. Bovino's proffered reason lacks objective corroboration. Mr. Bovino's official stance is Mr. Bullock's record of "solid experience" would have translated effectively into a Division Chief position.[45] However, resolving all ambiguities in Mr. Williams's favor, Mr. Bovino's decision was personal and based entirely on subjective assessments. As evidenced by email correspondence, Mr. Bovino decided to hire Mr. Bullock before starting as Chief. When Mr. Bovino was notified of Border Patrol's ongoing interview process, he had it cancelled. When a Border Patrol official urged Mr. Bovino to compare the credentials of Mr. Bullock and the six selected applicants before making a hiring decision, he

---

[44] R. Doc. 75 at 33.
[45] R. Doc. 61 at 16-17.

refused. In short, Mr. Bovino never considered a second choice. While it is true that Mr. Bovino did not have unilateral power to hire Mr. Bullock, any objective validation by insulated decision-makers was negated by Mr. Bovino's strong recommendation to his supervisors.

Ultimately, due to the personal nature of the hiring decision, the Court is left only with Mr. Bovino's integrity as evidence. However, this Court cannot make credibility determinations. Therefore, "given [DHS's] failure to evidence the grounds for the…subjective stage of the…selection process," a basic material fact remains unresolved, namely whether Mr. Bovino's stated reason for hiring Mr. Bullock is true and credible.[46]

Second, Mr. Bovino's proffered reason for hiring Mr. Bullock may be mere pretext for race discrimination. Prior to the hiring decision, Mr. Bovino and Mr. Bullock engaged in an email conversation in which Mr. Bovino was compared to a Confederate general and the New Orleans office, Mr. Williams's workplace, was likened to Union soldiers. Mr. Willaims contends the email is "racially charged" and indicative of Mr. Bovino's preference for white employees.[47] Mr. Bovino does not address the email directly. Viewed in a light most favorable to Mr. Williams, the email raises concerns of racial animus in Mr. Bovino's hiring decision.[48] Ultimately, the email, along with other evidence and the personal nature of Mr. Bullock's recruitment, highlights several material facts that remain in dispute, including Mr. Bovino's true motivations and whether his stated reasons are simply pretext for racial discrimination. Accordingly, DHS's request for relief is **DENIED**.

---

[46] *Alvarado*, 492 F. 3d at 617. Although not addressed by the parties, a plaintiff may also show "that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Burrell*, 482 F. 3d at 412.
[47] R. Doc. 75 at 33-34.
[48] *Id.*

## <u>CONCLUSION</u>

For the reasons set forth above, **IT IS ORDERED** that the motion is **GRANTED** while the request for relief is **DENIED**.

New Orleans, Louisiana this 2nd day of May, 2022.


_____
Hon.Greg Gerard Guidry
United States District Judge